Good morning, Your Honors, and may it please the Court, Athul Acharya for Plaintiff Appellate. In his concurring opinion in Egbert v. Boulay, Justice Gorsuch urged the Court to get rid of Bivens. The Court declined. Twice, it said, we are not dispensing with Bivens altogether. It declined even to grant certiorari on the question. So the core of Bivens remains intact. My client is a federal prisoner. He brings a claim for damages against individual, low-level federal officers for an isolated, not programmatic violation of his Eighth Amendment right against cruel and unusual punishment in the domestic context devoid of any entanglement with national security, foreign relations, or border policy. In other words, my client's claim is at the core of Bivens. The government is mistaken that it arises in a new context, and the government is mistaken that it presents special factors that counsel deny relief. I'll start with the context. The Supreme Court has been clear that a factual difference must be meaningful to give rise to a new context. Some differences, of course, it explained, will be so trivial that they will not give rise to a new context. And it emphasized that it was not casting doubt on the continued force or necessity of Bivens in its existing contexts. Surveying the post-Abbasi landscape, the Sixth Circuit explained that the Supreme Court had put an end to the expansion of Bivens' outer reaches, but it was not restricting the core of Bivens. That's why even after Egbert, several courts, like the Seventh Circuit, have said that Egbert does not change Bivens' continued force in its existing contexts. Why do you need Bivens if you have a Federal Tort Claims Act case? The remedies under the Federal Tort Claims Act are different than those available under Bivens. What are the meaningful differences as far as your client is concerned? I think, as far as my client is concerned, I'm not sure a Federal Tort Claims Act is available to him anymore. But that's sort of not the inquiry under Bivens. The Abbasi inquiry is whether it's, you know, whether it's available. Why isn't it available anymore? I think his time has expired, Your Honor. That's procedural. It's not that it wasn't available. That's right, Your Honor. But I'm not resting on that. I'm not resting on whether it was available to him. I think the Court's been clear that that's not the question. Should I talk about special factors rather than the context? Well, were you done answering? I think so. Okay. So let's assume that the statute had you wrong. Why do you need Bivens if you theoretically have a Federal Tort Claims Act? Well, whether or not—I think the question Your Honor is asking is whether my client has an alternative remedy in the Federal Tort Claims Act or whether people would have an alternative remedy there. And I think the answer to that is— The Act was passed by Congress. And Bivens, as we know, is a judicial construct. So, you know, normally the laws we enforce are not conjured up by us but are passed by Congress. That's true, Your Honor. And in the Federal Tort Claims Act, in the Westfall Act, which overhauled the Federal Tort Claims Act and made it a preemption statute that preempted all other torts against federal officers, Congress actually provided specifically in the text of the statute that constitutional torts, claims under the Constitution, were not preempted by the Federal Tort Claims Act. So Congress has legislated in the FTCA and also in the Prison Litigation Reform Act with Bivens' claims in mind. Yeah, it's not a preemption question. It's whether there's an alternative remedial scheme that, you know, ameliorates the separation of powers concerns from us doing something that Congress has already provided an alternative for. That's true, Your Honor. And two responses to that. First, the Congress legislated in the FTCA with Bivens' claims in mind. It said so in the text of the statute itself and in the legislative history. But I think more importantly, the Supreme Court said in Carlson, Carlson against Greene, that the FTCA is not an alternative remedy that displaces Bivens. It said that the two coexist, they're parallel remedies available to plaintiffs. And Carlson remains the law. The Supreme Court hasn't repudiated it. It didn't repudiate it in Abbasi, nor in Hernandez, nor in Egbert. In Hernandez, it was clear that the FTCA was not attempting to abrogate Bivens. And in Egbert, the petitioner raised the FTCA as the fact that the plaintiff had brought and lost an FTCA claim and the petitioner said, look, he had his alternative remedy and the majority didn't engage with that argument at all. The concurrence pointed that out and said the petitioner raised this FTCA argument. We are not saying that the FTCA is an alternative remedy that precludes Bivens and the majority had no response to that. So I think Carlson remains the law of the land. It was decided. It hasn't been overruled. The court continues to cite it favorably. The one proposition in Carlson that the FTCA doesn't displace Bivens has been adhered to in case after case after case from the Supreme Court from Bush against Lucas to the FTCA against Meyer to Malesko. So I think this court should not outrun the Supreme Court. Not every, you know, I know commentators have suggested that Carlson is next on the chopping block, but not every line of decisions reaches its anticipated conclusion. Even selective incorporation hasn't gotten to the entire Bill of Rights. And so this court shouldn't outrun the Supreme Court on the way to overruling Carlson if that's where the court is even headed, which I'm not sure it is. The government also raised another alternative remedy, the Marshall Services Internal Complaints Policy, policy of investigating complaints. And the government's argument is that that is analogous to the grievance procedure that was allowed as an alternative remedy in Egbert. But the two couldn't be more distinct. In Egbert, the grievance procedure was a product of notice and comment rulemaking. It was full of mandatory language. It created rights in the public and mandatory duties in the agency to investigate. By contrast, the Marshall Services internal policy regarding investigation of allegations is merely precatory. It's a statement that the Marshall Service is presently inclined to investigate complaints. Whether it does or not in an individual case is a matter of administrative grace. And that kind of non-binding policy document is not a remedy under Bivens or under Abbasi or Egbert. With a little bit of time left, I just want to emphasize, this case doesn't arise in a new context. The context that it arises in is the context of claims under the Cruel and Unusual Punishments Clause of the Eighth Amendment. That context was recognized in Carlson. The court continued to recognize it in Abbasi and Hernandez and Egbert. So this court doesn't even need to get to special factors. I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Thank you, counsel. I'll reserve your minutes for rebuttal. Thank you, your honors. May it please the court, Lucas Isakroff, United States Attorney's Office for the Southern District of New York, for the appellees. The plaintiff had a violent outburst in a federal courtroom and alleges that the force used to restrain him was constitutionally excessive. This claim presents a distinctly new context from the Supreme Court's recognized precedents and one in which the court should hesitate to infer a novel damages remedy. In Egbert v. Boole, the Supreme Court noted the extraordinary nature of the judiciary creating a new cause of action. It described the question of whether to recognize a new Bivens claim as asking whether there is any rational reason, even one, to think that Congress is better suited to weigh the costs and benefits of allowing a damages action here. And there is more than adequate reason to hesitate here. In rejecting every single attempt to- Counsel, sorry. I don't know if there's a delay here, so I apologize. No, your honor. I'm struggling a little bit with this. I recognize the very broad language in the recent case law that guides our evaluation of whether something is a new context. But then there are the actual facts that have been before the court. And certainly in Egbert and Hernandez, all of these cases were dealing with cases that were very far afield from the traditional law where individuals were deliberately in different sort of framework that we're used to. Are there any cases, whether circuit court cases or Supreme Court cases, that deal with, that conclude that claims that are this close to what one might call core of traditional Bivens actions were deemed to be novel? Yes, your honor. Yes, your honor. In our brief, we cite cases from the Sixth and the Tenth Circuits following Egbert that concluded that Eighth Amendment excessive force claims arose in a new context. I think those would be the most applicable circuit court arguments. But I would also note that Appellant began his argument by citing to Justice Gorsuch's concurrence in Egbert v. Boole. And I think that's an excellent point to raise, because Judge Gorsuch noted the incredibly narrow factual distinction between the facts of Egbert and the facts of Bivens itself. And his view was essentially, well, if a difference this slight is enough to create a new context and to create special factors that counsel hesitation to expand Bivens, then his view was that the Bivens remedy should be done away with. That's not what we're advocating here. But I think that the difference between this case and the facts of Carlson v. Green is much more substantial than the difference, is at least as substantial, if not much more so, than the difference between Egbert v. Boole and Bivens itself. Well, but didn't Egbert, I mean, at least as the court saw it, Egbert implicated the national security concerns that are unique to the border patrol context. And that's very different from oral law enforcement and corrections operations that have historically populated the Bivens docket. Yes, Your Honor. I would dispute the notion, though, that this case is the core law enforcement and prison operations context that have been previously recognized in Bivens and Carlson. This arises under the US Marshal Service statutory mandate to provide for the security of the federal judiciary. And the statute explicitly allocates primary responsibility in that role to the US Marshal Service. Congress has created a remedy to cover intentional constitutional torts that are intentional torts that are violations of state law that are carried out within that context. And the US Marshal Service has created its own independent complaint and disciplinary process. And I would point again to the Egbert court's discussion of the border patrol's disciplinary process there. So now you're sort of shifting to this alternative remedy piece. And one of the things I'm struggling with, there's sort of the project of predicting what the situation will be in this case, and the project of looking at the state of the law as it comes to us now. And as I understand it, you're putting weight on the Federal Tort Claims Act. And I'm trying to figure out if it wasn't just Carlson. We've heard, I'm not going to repeat the things that your colleague sort of cited from Carlson, but even after Carlson, the court said it's been crystal clear, Carlson made it crystal clear that the Federal Tort Claims Act is a parallel. It was the, I think it was the Malesko case that the court talked about that. Made it crystal clear that Congress intended the Federal Tort Claims Act and bids to serve as parallel complementary sources of liability. How do we rely on the existence of the Federal Tort Claims Act as an alternative remedy without doing violence to that existing non-overruled item from the Supreme Court? Yes, Your Honor. I think Carlson was answering a different question based upon the state of the doctrine at that time. So what Carlson was asking was whether Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective. Under that test, there's no dispute that the FTCA, as modified by the Westfall Act, does not explicitly intend to substitute for the Bivens action. But that portion of Carlson no longer accurately states the governing test. Egbert now states that so long as Congress or the executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second guess that calibration by superimposing a Bivens remedy. That is true even if a court independently concludes, to answer Judge Parker's question, that the government's procedures are not as effective as an individual damages remedy. So this is simply asking a different question. It was true, it remains true that Bivens does not intend to displace, I'm sorry, that the FTCA is not intended to displace the Bivens remedy. As Judge Park noted, it clearly does not preempt the Bivens remedy. But that's not to say that Congress and the executive have not created alternative remedies here that they view as adequate to deter constitutional misconduct. And that's- Please, go ahead. Does this defendant have a federal tort act claim? He does not. I agree with counsel that his claim is likely untimely now, but he would have. I see no reason why he would not have had an FTCA claim at the time. I'm not sure I understand the distance between a Eighth Amendment claim that says, well, I was ill or infirm or what have you and didn't get treatment. And an Eighth Amendment claim that said the officers unjustifiably beat me up and broke my arm. Well, I think there- What's the difference? There are a couple of differences. What's the efficient difference? The relevant difference is, Your Honor, is that one arises in the context of the requirement of prison officials to provide for the medical welfare of people within their custody, whereas this incident occurred pursuant to the US Marshal's statutory mandate to provide for the security of the courtroom. Also, one requires split-second decision-making. That there was a sudden, you know, in a setting of sentencing, it happens dozens of times every day. And, you know, it happens every day in this courthouse. It's a completely routine occurrence. Suddenly, there's a violent outburst and force needs to be applied. And frankly, it took, you know, Judge Karras quite a bit of doctrinal digging even to figure out whether the Fourth, Fifth, or Eighth Amendment was the applicable standard to apply here. Whereas the prison medical context, it's a routine, long-running occurrence, and it's one that's well-established by Carlson and cases applying Carlson. Well, in Hickford, the government said, told the court that routine, excessive force claims are cognizable under Bivens. Yes, Your Honor. So, are you backing off from that? No, Your Honor. Did your colleague misspeak when he told the Hickford court that? I don't believe he did, Your Honor, and I don't believe that there's any inconsistency with the position of the Solicitor General before the court and the position we're taking today. This is not a routine, run-of-the-mill, excessive force case that arises in what the court has described as Bivens' classic search and seizure context. Why not? Because this isn't law enforcement operations. This isn't executing a search warrant. This isn't patrolling the street. This is providing courtroom security. It's a distinct statutory. I think he alleged that when they took him to the holding pen, they beat him up and broke his arm. No, Your Honor. His allegation is that they tackled him to the ground in the well of the courtroom, and in the course of placing him in handcuffs, they broke his arm. So it was all occurring within the well of the courtroom. So there's no allegation that he was taken into a more traditional custodial setting, and that force was applied to him there, or at least that any such claim has not been preserved. So the different context is, in your view, who's acting, and whether it's prison officials or police or I think those are certainly among the relevant distinctions, Your Honor. I would note that Abbasi states that even a modest extension is still an extension and points to a number of factors. Among those is the constitutional right at issue. This is an Eighth Amendment excessive force case rather than a Fourth Amendment excessive force case. The statutory or other legal mandate under which the officer was operating, here the U.S. Marshal Service mandate to provide courtroom security. The risk of disruptive intrusion by the judiciary into the functioning of other branches, again here Congress has explicitly allocated authority over courtroom security to the U.S. Marshal Service, and also the presence of special factors. And that's where the Egbert Court notes that in some ways the two inquiries- Do the U.S. Marshal's regulations provide for compensatory damages? Not that I'm aware of, Your Honor, but I'm also not aware that the Border Patrol's regulations at issue- I'm not asking about the Border Patrol, I'm asking about the Marshal's regulations that you cited a minute ago. Do they authorize compensatory damages? No, Your Honor, they don't provide for that. You're only representing Mr. Officer Gizzy and Johnson, is that right? What's the status of the other defendants? There was a number of others. It's a bit complicated, Your Honor. We discussed this in, I think, footnote one or two of our brief. But three of the other defendants were never served, appear never to have been served, and never entered an appearance. One of the other defendants was a private contractor, but essentially- Not all federal officers? No, Your Honor. Operating under a federal contract, but under Malesko, or under Mnuchin v. Pollard, or Malesko would not be subject to bivens. I'm sorry, I see that I've run past my time, and if the court has no further questions, I urge the court to affirm. Thank you. I just want to make three points in response. First, Your Honor, Judge Robinson asked about other circuits. At least four other circuits have continued to recognize Bivens' claims since Abbasi. Two of them since Egbert. The Sixth Circuit in Jacobs against Allen. The Seventh Circuit in Greenpoint Tactical, that was after Egbert. The Fourth Circuit in Hicks against Ferreira, that was just a few weeks ago. And the Third Circuit in Bistreon against Levy. So the other circuits have not treated Bivens as a dead letter post-Abbasi or even post-Egbert. As to the constitutional right at issue, the government talks about this claim being under excessive force, whereas Carlson was about medical indifference. But as Your Honor pointed out, the Eighth Amendment doesn't parcel out individual rights on prohibitions on excessive force and deliberative indifference and indifference of threats and so on. It has one textual prohibition on cruel and unusual punishments. Well, but the Supreme Court Bivens jurisprudence has counseled for a pretty narrow slicing of differences in how we determine the contexts. So what's your response to the government's distinctions relating to the actors and the type of decision-making that was going on? Sure. As far as the actors go, the Supreme Court has recognized a Bivens claim against U.S. Marshals in the past in a case called Wilson against Lane. But more importantly, the Supreme Court in Abbasi didn't say this is a, we're recognizing, or Bivens recognized a claim against Bureau of Narcotics Agents. It didn't even say narcotics context generally. It called it the search and seizure context. It talked about the common and recurrent sphere of law enforcement. That's the level of granularity at which the Supreme Court analyzed context in Abbasi. And I don't think anything in Hernandez or Egbert called for a narrower context. Egbert didn't even analyze the new context prong. And, you know, if Bivens had been limited to Bureau of Narcotics Agents, it would have been a dead letter three years after it was announced because the Bureau of Narcotics ceased to exist then. That's not the way that the court did the analysis, certainly not in Bivens, and not even in Abbasi or later cases. My colleague also talked about the fact that the agents here were making a split-second decision. That's the kind of question that comes in under qualified immunity, which these defendants would still be entitled to raise, even if there was a Bivens claim here. So I don't think anything about the Supreme Court's Bivens jurisprudence calls for importing those concepts from qualified immunity to Bivens. And then finally, Your Honor, just sort of a more general point. You know, I think the question on everyone's mind after Egbert is why the Supreme Court didn't do away with Bivens. It was even a question presented in the petition for written certiorari, and the court declined certiorari on that question. And I think the answer is cases like this one. Most of us go our entire lives, rarely, if ever, interacting with federal agents. But federal prisoners are entirely at their mercy. And I think the reason that the Supreme Court has left Bivens claims open, left the door open for Bivens claims, is for claims like this. Claims against federal officers by federal prisoners for individual isolated violations of their right against cruel and unusual punishments. Thank you, Your Honor. I urge the court to reverse. Thank you, counsel. Thank you. Thank you both. We'll take the case under advisement. We'll also take a short recess for a few minutes, and then we'll be back. Court stays in recess.